# United States District Court

### for the
### Western District of New York



NOV 16 2017

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

### United States of America

**v.**

**Case No. 17-MJ- 663**

## ANJANEYULU KATAM AND MAHALAKSHMI CHERUVU

*Defendants*

### CRIMINAL COMPLAINT

I, <u>MICHAEL NUNZIATO, Special Agent with the U.S. Department of Labor, Office of Inspector General</u>, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about and in between <u>July 1, 2011 through the PRESENT</u>, in the Western District of New York, the defendants **ANJANEYULU KATAM AND MAHALAKSHMI CHERUVU** did knowingly forge, counterfeit, alter, or falsely make any immigrant or nonimmigrant visa, permit, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, and did knowingly make under oath, or as permitted under penalty of perjury under 28 U.S.C. § 1746, knowingly subscribe as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly present any such application, affidavit, or other document which contains any such false statement, in violation of Title 18, United States Code, Section 1546(a);

Did, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully make or use a false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in violation of Title 18, United States Code, Section 1001(a)(3);

Did knowingly engage or attempt to engage in a monetary transaction within the United States, in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, including visa fraud and false statements generally, in violation of Title 18, United States Code, Section 1957; and

Did knowingly conspire to commit offenses against the United States, including but not limited to visa fraud, false statements generally, and money laundering, and to defraud the United States or any agency thereof, and did act to effect the object of the conspiracy, in violation of Title 18, United States Code, Section 371.

### SEE ATTACHED AFFIDAVIT OF MICHAEL NUNZIATO, S.A., U.S. DEPT. OF LABOR.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

MICHAEL NUNZIATO, S.A. U.S. D.O.L.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____November 16 , 2017_____

*Judge's signature*

City and State: _Rochester, New York_

Jonathan W. Feldman, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK   )
COUNTY OF MONROE   )  SS:
CITY OF ROCHESTER   )

MICHAEL NUNZIATO, being duly sworn, deposes and says:

1.      I am a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations – Labor Racketeering and Fraud, currently assigned to the Buffalo Field Office.  Prior to joining the Department of Labor, I served as a Special Agent with the United States Department of State, Diplomatic Security Service (DSS).  I have been employed as a Special Agent for the United States Government for over eight years.  I completed the Diplomatic Security Training Center's Basic Special Agent Course and the Federal Law Enforcement Training Center's Criminal Investigator Training Program where I received specialized training in conducting investigations of federal offenses.

2.      As a part of my official duties, I investigate violations of the United States Code as they relate to, among other areas, foreign labor certification programs, visa and passport fraud, and foreign labor contracting fraud.

3.      This Affidavit is submitted for the limited purpose of establishing probable cause to believe that **Anjaneyulu KATAM** (hereafter referred to as "**KATAM**") and **Mahalakshmi CHERUVU** (hereafter referred to as "**CHERUVU**"):

   a.      Did knowingly forge, counterfeit, alter, or falsely make any immigrant or nonimmigrant visa, permit, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, and did knowingly make under oath, or as permitted under penalty of perjury under 28 U.S.C. § 1746, knowingly subscribe as true, any

false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly present any such application, affidavit, or other document which contains any such false statement, in violation of Title 18, United States Code, Section 1546(a);

b.  Did, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully make or use a false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in violation of Title 18, United States Code, Section 1001(a)(3);

c.  Did knowingly engage or attempt to engage in a monetary transaction within the United States, in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, including visa fraud and false statements generally, in violation of Title 18, United States Code, Section 1957; and

d.  Did knowingly conspire to commit offenses against the United States, including but not limited to visa fraud, false statements generally, and money laundering, and to defraud the United States or any agency thereof, and did act to effect the object of the conspiracy, in violation of Title 18, United States Code, Section 371.

4.  The statements contained in this affidavit are based upon my investigation and personal knowledge, my interviews with witnesses, my review of official documents and records, information communicated to me by other law enforcement agents and government officials, and my training and experience as a Special Agent with the Department of State and Department of Labor.  Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.

## BACKGROUND (H-1B VISAS)

5.  This affidavit concerns fraud in connection with the application for and issuance of multiple U.S. H-1B visas.  An H-1B visa is a non-immigrant U.S. visa set forth in

2

the Immigration and Nationality Act, Section 101(a)(15)(H).  It allows U.S. employers to temporarily employ foreign workers in specialty occupations.

6.     H-1B visas are commonly issued to foreign nationals seeking to work in specialty occupations, most frequently involving computer science and computer programming.  The H-1B visa application process involves submissions by a "petitioner" and several layers of review and approval by various government agencies.  The petitioner is usually the future employer of the foreign national or a company coordinating a work contract for another employer.   The petitioner first must file the Employment and Training Administration (ETA) Form 9035 Labor Condition Application (LCA) with the U.S. Department of Labor (DOL).  The LCA identifies who is petitioning, who the "beneficiary" will be, and where the "beneficiary" will be working.  The beneficiary is the foreign national in a specialty occupation who will receive the H-1B visa.  The DOL then conducts a review and either certifies (approves) or rejects the LCA.  If the DOL certifies the LCA, the petitioner then submits Form I-129 Petition for Nonimmigrant Worker with the Department of Homeland Security (DHS), Citizenship & Immigration Services (USCIS).  The I-129 includes the certified LCA, more specific information about the petitioner, beneficiary education and experience documents, and contract and work order details between the petitioner, beneficiary and the "end-client."  The end-client is the actual employer, which is sometimes the same as the petitioner or sometimes different.  An approved I-129 allows the beneficiary to submit Form DS-160 to the applicable U.S. Embassy in order to conduct a visa interview and issuance of the H-1B visa.

7.     A petitioner is required to attest, under penalty of perjury, to the accuracy of all information that the petitioner places in the I-129 petition, including the validity of the end-client company.  Accordingly, the I-129 petitioner is responsible for confirming and attesting that the end-client company is a legitimate employer and that the beneficiary will actually be contracted to work for the end client listed on the I-129.

8.     As is explained below, KATAM and CHERUVU violated the above-referenced statutes by knowingly falsifying H-1B visa applications for foreign nationals. KATAM and CHERUVU submitted visa applications containing false end-clients, false labor contracts, and false work experience documents, among other information.  KATAM and CHERUVU also charged illegal fees to beneficiaries and engaged in monetary transactions in excess of $10,000 involving money derived from visa fraud.  Their actions resulted in the unlawful entry and employment of aliens in the United States, all in violation of the above-referenced statutes.

## THE INVESTIGATION

9.     In November 2016, I received a law enforcement referral from the USCIS Fraud Detection and National Security (FDNS) Supervisor in Buffalo, NY regarding potential visa fraud being perpetrated out of Rochester, NY.  The FDNS Supervisor is responsible for monitoring and auditing visa petitions, including H-1B petitions, for potential fraudulent activity.  If the FDNS Supervisor becomes aware of potentially fraudulent activity, they will refer it to law enforcement so that a criminal investigation may be commenced.

4

10.     The FDNS referral reported that information technology companies Prosoft IT Services Inc. (hereafter referred to as Prosoft) and Reliance IT Service Inc. (hereafter referred to as Reliance), both located in Monroe County, NY, had submitted H-1B petitions with false and/or fraudulent information to the Department of Homeland Security and Department of Labor.   KATAM is the President of Prosoft and KATAM'S wife, CHERUVU, is the President of Reliance.   According to the FDNS referral, both have petitioned for H-1B visas for beneficiaries residing in India for several years.   FDNS reported that its audits discovered that both KATAM and CHERUVU, through their companies, committed various forms of fraud during H-1B visa processing.   Specifically, the FDNS audit revealed that KATAM and CHERUVU had submitted false contracts, charged illegal fees to applicants, provided fake work and education experience documentation, and engaged in illegal "benching" of H-1B visa holders.   "Benching" refers to the fraudulent practice in which an H-1B petitioner (in this case KATAM and CHERUVU) petitions for an H-1B visa for a beneficiary worker, by falsely indicating that the beneficiary will fill a specific position in a company located in the United States. The beneficiary is considered to be "benched" because there is no actual job opening upon their arrival to the U.S., in contradiction to the submitted I-129 petition.  Based on the FDNS law enforcement referral, I began the instant investigation by reviewing H-1B petitions and associated paperwork submitted to the DOL and DHS by KATAM and CHERUVU.

## Beneficiary 1; SQL Data Solutions

11.     I obtained and reviewed an I-129 petition and accompanying paperwork for an H-1B visa, identified by DHS receipt EAC-11-209-51054, which KATAM signed under penalty of perjury, and submitted on behalf of petitioner Prosoft in July 2011.  KATAM listed

5

the end-client to be SQL Data Solutions at 43 Herkomer St., New Hyde, NY. By attesting that SQL Data Solutions was the end-client, KATAM attested that SQL Data Solutions would in fact employ the beneficiary in a designated position. The beneficiary (hereafter referred to as Beneficiary 1) was interviewed following the submission of a DS-160 visa application in April 2012 with U.S. Consular officials at the U.S. Consulate in Chennai, India. During the H-1B visa interview, Beneficiary 1 confirmed that he would be working for SQL Data Solutions, but also stated that he paid a $3,500 fee to Prosoft in order to process his I-129 petition. This violates the Immigration and Nationality Act (INA), Section 212(n)(2)(C)(vi)(II), which prohibits an employer from requiring a petitioner to reimburse the employer for petitioning fees. This fee charged by Prosoft renders the I-129 petition and subsequent visa application in violation of the law concerning fraud and misuse of visas.

12.    Based on this, and other indicators of fraud, the Consulate in 2012 requested a follow up investigation of SQL Data Solutions by the Kentucky Consular Center, Fraud Prevention Unit (KCC FPU) in order to confirm whether SQL was in fact a legitimate end-client, as represented by KATAM. Due to the illegal payment to KATAM by Beneficiary 1, the petition was denied and Beneficiary 1 was not issued a visa.

13.    I conducted additional subsequent research using certain government databases and learned that SQL Data Solutions has been the target of multiple past assessments related to other H-1B petitions. The previously mentioned KCC is a centralized processing facility for petition-based nonimmigrant visa programs, located in Williamsburg, Kentucky. As part of its processing tasks, KCC houses a Fraud Prevention Unit (FPU), which creates base files for petitioners and researches petitioner and end-client information in connection with

6

applications. The purpose of the FPU is to allow the government to research the petitioner and end client in more depth from within the U.S. A U.S. consular post is not able (logistically or otherwise) to do proper petitioner or end-client research. As a result, the FPU conducts petitioner research or verification tasks within the U.S.

14.    Based upon my research, I learned that in November 2012 and May 2014, KCC FPU determined that SQL Data Solutions had previously engaged in fraud relative to H-1B visa applicants. Specifically, SQL was falsely listed as an end-client for several beneficiaries and was determined to have plagiarized a project description. KCC FPU additionally determined that SQL was unable to provide employment for a previous beneficiary.

15.    The fact that Beneficiary 1 paid a $3,500 processing fee to Prosoft in order to process his I-129 petition, which is statutorily required to be paid by the supposed end-client, SQL Data Solutions, coupled with the above findings regarding SQL's prior involvement in fraud, and specific findings involving plagiarism, indicates that Beneficiary 1 was never intended to work for SQL and that the petition submitted by KATAM was fraudulent in this regard.

### Beneficiary 2; Thomson Reuters

16.    I obtained and reviewed an I-129 petition for an H-1B visa, identified by DHS receipt EAC-13-097-52371, that KATAM submitted on behalf of petitioner Prosoft, in February 2013. KATAM signed the petition, under the penalty of perjury, and stated that the beneficiary (hereafter referred to as Beneficiary 2) was to work at end-client West Services DBA Thomson Reuters (hereafter referred to as Thomson Reuters). As part of the petition,

7

KATAM submitted a purported employment contract, which KATAM represented was the actual employment contract that had been entered into between Prosoft, Beneficiary 2 and Thomson Reuters. The contract appeared on Thomson Reuters letterhead and bore the signature of an actual Thomson Reuters representative. The contract was personally signed by KATAM, under penalty of perjury, on behalf of Prosoft. KATAM also signed the ETA 9035 LCA, which was submitted to the DOL under warning against false statements.

17.     The KCC FPU contacted General Counsel for end-client Thomson Reuters in March 2013 to determine whether the application submitted by KATAM was legitimate. General Counsel for Thomson Reuters reported it had no agreement with Prosoft or KATAM for EAC-13-097-52371 and the contract submitted by KATAM via Prosoft was done without Thomson Reuters' knowledge or consent. Thomson Reuters further reported that it appeared that the contract was a forgery, as Thomson Reuters had never been involved in the petition for Beneficiary 2, and had never sought to hire Beneficiary 2. Thomson Reuters further reported that the signature of the Thomson Reuters representative was forged, as the representative had never entered into a contract involving Beneficiary 2 with KATAM or Prosoft.

18.     In 2017, I obtained a sworn statement from the Thomson Reuters representative, whose signature was used on the purported employment contract submitted by KATAM with respect to Beneficiary 2. She confirmed that she had never signed any of the documents submitted by KATAM for EAC-13-097-52371 or Beneficiary 2, and that her signature was utilized by KATAM without her knowledge or consent.

8

19.     By the above-described actions, KATAM engaged in visa fraud and did knowingly make or use false writings or documents with respect to Beneficiary 2.

## Beneficiary 3; 1st New York Technology Partners Petition

20.     I obtained and reviewed an I-129 petition for an H-1B visa submitted by KATAM in April 2013, on behalf of petitioner Prosoft identified by DHS receipt EAC-13-138-53388. The beneficiary was KATAM'S sister-in-law, hereafter known as Beneficiary 3. The supposed end-client, as stated by KATAM under the penalty of perjury, was New York Technology Partners (NYTP), which is an information technology and engineering consulting firm with locations in New York and New Jersey. With the petition, KATAM submitted experience documents for Beneficiary 3 detailing the work experience that qualified her for the position at NYTP.

21.     Per protocol, Beneficiary 3 (KATAM's sister-in-law) was interviewed at the U.S. Consulate General in Hyderabad, India on November 21, 2013. During the interview, Beneficiary 3 provided a sworn written statement in which she admitted that KATAM provided her with fake experience documents that were used in her H-1B application. Beneficiary 3 further admitted that if granted an H-1B visa, she would be working for KATAM and not NYTP in contradiction to the I-129 submitted by KATAM.

22.     In addition, further investigation into DOS records showed that the contract between Prosoft and NYTP, signed by KATAM and submitted as part of the H-1B application, was fraudulent. In May 2016 the KCC FPU contacted the president of NYTP, who stated that the company had no agreement with Prosoft or KATAM and that the contract

submitted by Prosoft in support of the H-1B application, which appears to be on NYTP letterhead, was forged and submitted without their knowledge or consent. By his actions, KATAM engaged in visa fraud and did knowingly make or use false writings or documents with respect to Beneficiary 3.

<u>**Beneficiary 4; 2nd New York Technology Partners Petition**</u>

23.      I obtained and reviewed an I-129 petition for an H-1B visa submitted by KATAM in May 2014, on behalf of petitioner Prosoft identified by DHS receipt EAC-14-148-54731. According to the I-129, the beneficiary, hereafter known as Beneficiary 4, was to work for NYTP in New Jersey.

24.      Beneficiary 4 was awarded an H-1B visa for this petition, however further investigation revealed multiple facets of fraud connected to his H-1B visa and I-129 petition. I conducted an investigation into DOS and USCIS records and discovered that the contract between Prosoft and NYTP, submitted as part of the H-1B petition EAC-14-148-54731 by KATAM, was fraudulent. In May 2016 the KCC FPU contacted the president of NYTP, who stated that the company never had an agreement with Prosoft or KATAM and that the contract submitted by Prosoft as part of EAC-14-148-54731 for Beneficiary 4, which appears to be on a NYTP letterhead, was forged and submitted without their knowledge or consent. In addition to confirming that the contract submitted in EAC-14-148-54731 was fraudulent, in September 2017 the president of NYTP confirmed that Beneficiary 4 never worked for NYTP, which is in direct contrast to the information KATAM submitted, under oath, in EAC-14-148-54731. By his actions, KATAM engaged in visa fraud and did knowingly make or use false writings or documents with respect to Beneficiary 4.

10

25.     Further investigation revealed that Beneficiary 4 remained in the U.S. under the fraudulent I-129 petition EAC-14-148-54731, despite the fact that he never worked for NYTP as required.  In September 2016, Beneficiary 4 was still in the U.S. on the fraudulent H-1B visa and was working in connection with a company called SRS Infoway LLC.  Citizens Bank records for Prosoft show that in September 2016, SRS Infoway made payments to Prosoft totaling $38,976.50 for Beneficiary 4.  These payments included Beneficiary 4's salary, as well as a fee paid to Prosoft for Prosoft's role in placing Beneficiary 4 with SRS Infoway. These payments were a direct result of the visa fraud perpetrated by KATAM in May 2014 and the continued use of the fraudulent H-1B by Beneficiary 4 and Prosoft.  The table below details these transactions:

| DATE | FROM | TO | AMOUNT |
|------|------|-----|--------|
| 9/19/2016 | SRS INFOWAY (Bene. 4) | Prosoft | $9,744.50 |
| 9/19/2016 | SRS INFOWAY (Bene. 4) | Prosoft | $9,744.00 |
| 9/19/2016 | SRS INFOWAY (Bene. 4) | Prosoft | $10,208.00 |
| 9/27/2016 | SRS INFOWAY (Bene. 4) | Prosoft | $9,280.00 |

After deducting Prosoft's fee, Prosoft/KATAM paid Beneficiary 4's salary by transferring money from the Prosoft Citizens Bank account to the payroll management company Paychex, Inc.  Both Paychex and Citizens are headquartered within the United States.  The following table shows the salary amounts paid to Beneficiary 4 from Prosoft via Paychex from September to November 2016:

11

| DATE | FROM | TO | AMOUNT |
|------|------|-----|--------|
| 9/21/2016 | Prosoft | Beneficiary 4 | $5,163.22 |
| 10/21/2016 | Prosoft | Beneficiary 4 | $5,811.22 |
| 11/21/2016 | Prosoft | Beneficiary 4 | $5,811.22 |

26.    Citizens Bank records showed that $33,813.28 of visa fraud proceeds remained in the Prosoft account on October 19, 2016, after Beneficiary 4's salary was paid out by KATAM. On that same day, October 19, 2016, $20,000 was transferred from the Prosoft Citizens Bank account into Katam's personal checking account. This transfer was funded by visa fraud proceeds in excess of $10,000 and therefore constitutes a violation of Title 18, United States Code, Section 1957.

27.    In addition, on October 21, 2016, after the transfer of visa fraud proceeds and then another salary payment from Prosoft to Beneficiary 4, $18,001.06 of visa fraud proceeds remained in the Prosoft Citizens Bank account. On October 24, 2016, $20,000 was transferred from the Prosoft Citizens Bank account to the Reliance Citizens Bank account. As stated above, Reliance is owned by CHERUVU, KATAM'S wife. This transfer was funded with visa fraud proceeds, in excess of $10,000, and therefore constitutes a violation of Title 18, United States Code, Section 1957.

## Beneficiary 5; 3rd New York Technology Partners Petition

28.    I obtained and reviewed an I-129 petition for an H-1B visa submitted by KATAM in April 2015, on behalf of petitioner Prosoft identified by DHS receipt EAC-15-

148-51619. The beneficiary, hereafter known as Beneficiary 5, was to work for NYTP in New Jersey.

29.     Investigation into USCIS and DOS records showed that the contract between Prosoft and the end-client NYTP submitted as part of the H-1B petition EAC-15-148-51619 was fraudulent. KATAM listed a sub-contractor in this petition, company Reliance, which is owned by CHERUVU, KATAM's wife.   The Reliance work order was signed by CHERUVU and was based on the fraudulent contract between Prosoft and NYTP. Therefore, the work order submitted by CHERUVU is also fraudulent. In May 2016 the KCC FPU contacted the president of the end-client company NYTP, who stated that the company never had an agreement with Prosoft, KATAM, Reliance, or CHERUVU.  The president of NYTP further stated that the contract submitted by Prosoft was done without their knowledge or consent. KATAM signed the I-129 petition under penalty of perjury and signed the ETA LCA under warning against false statements.  By their actions, KATAM and CHERUVU engaged in visa fraud and did knowingly make or use false writings or documents with respect to Beneficiary 5.  Additionally, by submitting the fraudulent work order and acting as the complicit sub-contractor in this petition, the president of Reliance, CHERUVU, with her husband KATAM, engaged in a conspiracy to commit visa fraud, make or use false writings or documents, and defraud the United States.

### Site visits to Prosoft IT's Office (140 Metro Park, Rochester, NY) and Reliance IT's Office (20 Office Parkway, Pittsford, NY)

30.     On February 8, 2017 I visited 140 Metro Park, Rochester, NY, the purported address for Prosoft. The visit took place during business hours, shortly after 11:00 am. The

address is within an office park, and the actual building houses numerous other businesses. During the visit, I spoke with a receptionist for the building, hereafter known as Witness 1. She stated that she had worked at 140 Metro Park for several months and was familiar with employees of the business located therein. Witness 1 is stationed in the public entrance area and acts as an administrative conduit between businesses at the location and the property managers. Witness 1 stated that she rarely saw KATAM and communicated with him for administrative purposes via email only. Witness 1 stated that the door to suite 7A, the Prosoft office, is nearly always closed and that there are no on-site Prosoft employees of which she is aware. She also stated that the space is only large enough for one or two people and that the office only contains a desk and two chairs. Witness 1 added that she has never seen any other employees besides KATAM in that office space. The door of suite 7A, which is marked as Prosoft Services, Inc., is flanked on either side by two doors with different business names. I observed no activity at suite 7A that day and there was no response to multiple knocks on the suite door.

31.     On February 8, 2017, I also visited 20 Office Parkway, Suite 119, Pittsford, NY, the purported address for Reliance. This visit also took place during business hours. I made similar observations with respect to Reliance's purported headquarters as I did with Prosoft's. There were no employees or staff present and it appeared that the lights were off. I observed no activity to indicate that an IT business was actually housed there.

32.     I conducted additional visits to both Prosoft's and Reliance's purported offices on April 12, 2017, June 6, 2017, and July 6, 2017 during business hours. During these

14

subsequent visits, I made similar observations as the first visits. There were no employees present and I did not observe lights, or any activity consistent with an actual, operating business office. Based on my observations, it does not appear that the Prosoft or Reliance offices actually house operating IT companies as represented by KATAM and CHERUVU on H-1B applications.

33.     Based on your affiant's training and experience, the use of business "fronts" is a hallmark practice of individuals perpetrating H-1B visa fraud. This is because perpetrators of visa fraud schemes require physical addresses and business locations in order to shield themselves from detection by regulatory or investigating agencies. In addition, perpetrators of visa fraud often falsely claim on visa application documents that the beneficiary worker will be hired to work at a company owned by the perpetrator at a specific location. To accomplish the scheme, the perpetrator creates a corporation, such as Prosoft or Reliance, that actually does not engage in any IT service business activity whatsoever. To further the appearance that the perpetrator runs a legitimate business that requires H-1B visa workers, the perpetrator will rent space in an office park such as the purported locations of Prosoft and Reliance. These offices typically consist of small spaces that are unsuitable for the supposed number of employees the companies claim to have. They also lack the infrastructure and equipment to run such businesses. Based on my site visits described above, there is cause to believe that KATAM and CHERUVU rent the spaces at 140 Metro Park and 20 Office Parkway as "fronts" for Prosoft and Reliance in furtherance of the visa fraud described herein, and that no actual business activity occurs there.

15

## Beneficiary 6; Reliance and Prosoft Services

34.    I obtained and reviewed an I-129 petition for an H-1B visa, identified by DHS receipt EAC-16-177-51150, submitted by CHERUVU on behalf of petitioner Reliance in May 2015.   The end-client listed in this petition is Prosoft, and according to the petition, the beneficiary (hereafter referred to as Beneficiary 6) was to work as a Programmer Analyst at the Prosoft address at 140 Metro Park, Suite 7A, Rochester, NY.  As stated above, this office space is empty and is likely being operated by KATAM as a false business front.  CHERUVU signed the I-129 petition under penalty of perjury and signed the ETA LCA under warning against false statements.

35.    In January 2017, and again in February 2017, DSS Agents interviewed Beneficiary 6 in San Francisco, CA regarding EAC-16-177-51150, the I-129 petition submitted by CHERUVU.  Beneficiary 6 reported that during the processing of his H-1B, the only person he had contact with from Reliance was KATAM and understood KATAM to own both Reliance and Prosoft.  Beneficiary 6 stated he never worked on any internal projects for Prosoft, as was listed in the I-129 petition signed by CHERUVU.  Beneficiary 6 also stated he never moved or intended to move to Rochester, NY, despite the fact that CHERUVU submitted under the penalty of perjury, that Beneficiary 6 would work at 140 Metro Park in Rochester, NY.

36.    Beneficiary 6 further stated that in the initial processing stages of the H-1B petition EAC-16-177-51150, KATAM instructed him to pay $2500 in fees for the "Premium Processing Service" which provides for an expedited processing by USCIS of the I-129

petition. However, KATAM never filed for the Premium Processing for Beneficiary 6. Additionally, when Beneficiary 6 finally began to work in May 2016, it was remotely, part-time, and for Reliance, not Prosoft, as listed in the I-129 petition. Beneficiary 6 also reported that he was not paid until August 2016. During the interview with DSS Agents, Beneficiary 6 admitted that he had been illegally benched by KATAM during this period, as no job was actually ready for him as claimed in EAC-16-177-51150. By their actions, KATAM and CHERUVU engaged in visa fraud, did knowingly make or use false writings or documents, and conspired to do the same with respect to Beneficiary 6.

### Beneficiary 7; TechPro Consulting Inc. and Prosoft

37.    I obtained and reviewed an I-129 petition for an H-1B visa, identified by DHS receipt number EAC-16-119-52278, submitted in March 2016 by TechPro Consulting Inc. (hereafter referred to as TechPro). Harpreet SANDHU is the President of TechPro, headquartered in Parsippany, NJ. On March 9, 2017 DSS Agents visited TechPro's alleged address. As with Prosoft, no employees were present during business hours and the office had the telltale characteristics of a business front, which was unable support the type of work the business was supposedly engaged in. The end-client for this petition was Prosoft and the beneficiary (hereafter referred to as Beneficiary 7) was to work as a Senior Program Analyst for Prosoft exclusively at their business location in Rochester, NY. On March 23, 2017 DSS Agents from the Boston Field Office interviewed Beneficiary 7 who stated that she never worked in Rochester, NY for Prosoft as was claimed in her H-1B visa petition documents. Beneficiary 7 stated that shortly after her arrival to the U.S. from India, she spent two days at

17

the TechPro office in NJ and then traveled to Rochester, NY to begin work for Prosoft. Beneficiary 7 stated that when she arrived to Rochester, she never went to the Prosoft office, which was the place of employment listed in the I-129 petition. Beneficiary 7 stated that KATAM only met with her and other beneficiaries at non-work locations in Rochester. Beneficiary 7 stated that she then returned to NJ and only worked intermittently from June 2016 until early July 2016, in contrast to the representations made in her H-1B visa documents. Beneficiary 7 stated that Prosoft did not have the resources available for her continuous work, and by July 11, 2016 SANDHU and TechPro placed her on a different contract.

38.     Beneficiary 7 further stated that her new contract was obtained through a middle vendor called Cool Soft, and the new end-client is the Massachusetts Department of Transportation (MASS-DOT). Her position title with MASS-DOT is that of a Senior Program Analyst and she works in downtown Boston, MA. According to USCIS, DOS, and DOL records, Beneficiary 7 should still be working on EAC-16-119-52278 for Prosoft in Rochester, NY or at TechPro in Parsippany, NJ as no adjustment or new I-129 had been submitted by TechPro.     KATAM'S actions demonstrate that there was no intent for Beneficiary 7 to actually work in Rochester, NY or for Prosoft, as was annotated in I-129 EAC-16-119-52278. By offering a non-existent job and the subsequent petitioning through visa fraud and false statements, KATAM and SANDHU engaged in visa fraud, did knowingly make or use false writings or documents, and conspired to do the same with respect to Beneficiary 7.

18

### Beneficiary 8; Reliance and Prosoft

39.     I obtained and reviewed an I-129 petition for an H-1B visa, identified by DHS receipt number EAC-16-033-51880 submitted by Reliance in November 2015. The end-client listed in this petition is Prosoft, and according to the petition, the beneficiary, (hereafter referred to as Beneficiary 8) was to work as a Computer Systems Analyst at the Prosoft address in Rochester, NY. CHERUVU signed the I-129 petition under penalty of perjury and signed the ETA LCA under warning against false statements. During an interview with DSS Agents in San Francisco on April 14, 2017, Beneficiary 8 stated that he spoke with KATAM in November 2015 when he contacted Reliance to inquire about transferring his H-1B visa. Beneficiary 8 explained that KATAM stated he was interested in employing Beneficiary 8 and that he had multiple work options for him. Beneficiary 8 admitted that neither KATAM nor anyone from Reliance told him who his end-client would be, nor any other details about what KATAM would place in his petition. Around this same time, November 2015, CHERUVU on behalf of Reliance submitted EAC-16-033-51880.

40.     Unbeknownst to Beneficiary 8, CHERUVU falsely stated in the I-129 petition that Beneficiary 8 would be working on an in-house project for Prosoft in Rochester, NY. Beneficiary 8 explained that once his petition with Reliance was approved around December 2015, Beneficiary 8 moved to Redwood City, CA and asked KATAM to only market him to IT companies within the San Francisco Bay Area, to which KATAM agreed. KATAM told Beneficiary 8 that he could work remotely until he could find him an actual contract. Beneficiary 8 stated that he never worked in Rochester, NY, that he was never told any of the

19

details of the internal project he worked on for Prosoft, and that he only worked sporadically on any Prosoft project during this time. Beneficiary 8 explained that during this time period, representatives from Reliance marketed him to between ten and fifteen IT companies, and that he interviewed with seven or eight. None of these interviews resulted in a job offer, so Beneficiary 8 began to market himself in order to find an end-client and an actual contract. Through his own efforts, Beneficiary 8 received an offer from the Samsung Group in San Jose, CA in March 2016. Neither KATAM or CHERUVU via Reliance or otherwise submitted an adjustment to Beneficiary 8's I-129 petition changing the end-client to Samsung Group in San Jose, CA as is required by law.

41.     Beneficiary 8 resided in the U.S. for months in violation of the law, and in antithesis to the H-1B visa program, had to find his own employment. Knowing that Beneficiary 8 would never work at the location put forth in the I-129 petition and that no job opening was ready for him, KATAM and CHERUVU engaged in visa fraud, did knowingly make or use false writings or documents, and conspired to do the same with respect to Beneficiary 8.

## Beneficiary 9; Reliance and Prosoft

42.     I obtained and reviewed an I-129 petition for an H-1B visa, identified by DHS receipt number EAC-16-066-52232, submitted by Reliance and signed by CHERUVU in December 2015. The end-client listed in this petition is Prosoft, and according to the petition, the beneficiary, (hereafter referred to as Beneficiary 9) was to work as a Programmer Analyst at Prosoft in Rochester, NY. On May 19, 2017 DSS and HSI Special Agents interviewed

Beneficiary 9 at his place of employment at 1500 Solana Blvd, Westlake, TX. Beneficiary 9 reported that after being granted an H-1B visa, he never traveled to Rochester, NY and never performed any work for either Prosoft or Reliance, in direct contradiction to the I-129 signed and submitted by CHERUVU. Beneficiary 9 instead went directly to Westlake, TX to work for a company called Sabre Corporation. According to Beneficiary 9, there was no intent for him to actually work in Rochester, NY for Prosoft as was submitted by CHERUVU in I-129 EAC-16-066-52232. By their actions, KATAM and CHERUVU engaged in visa fraud, did knowingly make or use false writings or documents, and conspired to do the same with respect to Beneficiary 9.

## Conclusion

43.     In view of the foregoing, I believe there is probable cause to conclude that Anjaneyulu KATAM and Mahalakshmi CHERUVU:

a.     Did knowingly forge, counterfeit, alter, or falsely make any immigrant or nonimmigrant visa, permit, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, and did knowingly make under oath, or as permitted under penalty of perjury under 28 U.S.C. § 1746, knowingly subscribe as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly present any such application, affidavit, or other document which contains any such false statement, in violation of Title 18, United States Code, Section 1546(a);

b.     Did, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully make or use a false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in violation of Title 18, United States Code, Section 1001(a)(3);

21

c.   Did knowingly engage or attempt to engage in a monetary transaction within the United States, in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, including visa fraud and false statements generally, in violation of Title 18, United States Code, Section 1957; and

d.   Did knowingly conspire to commit offenses against the United States, including but not limited to visa fraud, false statements generally, and money laundering, and to defraud the United States or any agency thereof, and did act to effect the object of the conspiracy, in violation of Title 18, United States Code, Section 371.

MICHAEL NUNZIATO
Special Agent, U.S. Department of Labor
Office of Inspector General,
Office of Investigations – Labor
Racketeering and Fraud

Subscribed to and sworn before me,
this 16 day of November, 2017.

JONATHAN W. FELDMAN
United States Magistrate Judge