IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

ANJANEYULU KATAM,

                Defendant.

18-CR-6116-FPG

## STATEMENT OF THE GOVERNMENT
## WITH RESPECT TO SENTENCING FACTORS

**PLEASE TAKE NOTICE**, that the government hereby adopts all findings of the Presentence Investigation Report (PSR) with respect to sentencing factors in this action.

Should the defendant present any letters of support or sentencing statement to the Court, the United States will move to strike the items from the record if this office is not provided with copies at least three business days prior to sentencing.

The defendant is required by 18 U.S.C. § 3013 to pay the sum of $100 at the time of sentencing.  Immediately after sentencing, the defendant must pay the amount due by personal check, cashier's check or certified funds to the United State District Court Clerk.

It is requested that the Court order that all financial obligations be due immediately. In the event the defendant lacks the ability to immediately pay the financial obligations in full, it is requested that the Court set a schedule for payment of the obligations.

In the event present counsel for the defendant will continue to represent the defendant after sentencing in regard to the collection of unpaid financial obligation(s), it is requested that a letter so advising be sent to:

> Asset Forfeiture/Financial Litigation Unit
> U.S. Attorney's Office--WDNY
> 138 Delaware Avenue
> Buffalo, New York 14202

If a letter is not received within 10 days of sentencing, the defendant will be directly contacted regarding collection of the financial obligation(s).

Upon the ground that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, the government hereby moves the Court to apply the additional one (1) level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).

**The 3553(a) factors support a sentence within the guidelines set forth in the plea agreement.**

In reviewing the Section 3553(a) factors, as enumerated in Title 18 of the United States Code, the government respectfully requests the Court particularly consider the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, the need for deterrence, and the need to protect the public from further crimes. *See* Title 18, United States Code, Sections 3553(a)(1) and (a)(2).

It is well settled that calculating the advisory sentencing guidelines is the first step in determining the defendant's ultimate sentence, after which the Court must consider the §3553(a) factors. *United States v. Dorvee,* 616 F.3d 174, 180 (2010) quoting *United States v. Gall,* 552 U.S. 38, 49-50 (2007); *see also, United States v. Aumais,* 656 F.3d 147 (2d Cir. Sept. 8, 2011). In *Aumais,* decided in September 2011, the Second Circuit upheld the guidelines sentence imposed by the district court, noting that the sentence was based upon an "individualized assessment" of the §3553(a) factors. *Aumais,* at 157. In this case, an *"individualized assessment"* of this defendant supports a prison sentence of 12 to 18 months, consistent with the guideline calculation set forth in the plea agreement.

## Factual Background

As part of his plea agreement, the defendant admitted that from July 1, 2011 through November 16, 2017, he was the owner and operator of a company called "Prosoft IT Services, Inc." (Prosoft), which is operated in the Western District of New York.  The defendant also admitted that he operated a company called "Reliance IT Services, Inc.," (Reliance) in the Western District of New York, which was nominally owned by the defendant's wife. Through Prosoft and Reliance, the defendant coordinated work contracts for Indian nationals to work in various computer science positions in the United States. As such, the defendant petitioned for multiple Indian nationals to enter the United States via the H-1B visa program.

The defendant further admitted that from July 1, 2011 through November 16, 2017, he knowingly submitted multiple H-1B visa applications to the United States Departments of State, Labor, and Homeland Security, which contained materially false statements and

representations, including but not limited to false end-clients, false work locations, false labor contracts, false work experience documents, and other information. The defendant submitted the false and fraudulent visa applications under oath and under the penalty of perjury.

### **The defendant's fraud was deliberate, complex, and extensive in nature.**

The investigation of this matter began when Agents from the Department of State received a fraud referral in which multiple visa applications submitted by the defendant were found to contain dubious and outright false information. As the investigation proceeded, Agents learned that the defendant consistently defrauded the H-1B visa program from 2011 through 2017. During that time, the defendant knowingly and intentionally falsified H-lB visa applications for Indian nationals to work in the United States in certain technology positions. This resulted in the unlawful entry and employment of aliens in the United States in positions that might otherwise have been awarded to American workers or lawful H-1B recipients.

The Departments of State, Labor, and Homeland Security engaged in an extensive investigation concerning the defendant's visa fraud. For the purposes of their investigation, Agents selected a sample of nine visa applications, each consisting of several hundred pages of information, which the defendant submitted between 2011 and 2017. Agents systematically deconstructed this test sample, examining labor contracts, salary contracts, salary averages, local pay scales, work experience documents, education documents, and other information submitted by the defendant in support of the visa applications. They also interviewed multiple supposed beneficiaries throughout the United States and representatives

from supposed end-client companies.  They found that the defendant repeatedly lied about where beneficiaries would be working, and that many end-client companies never had agreements with the defendant, in contradiction to the sworn statements that he provided the Department of State.  In some instances, the defendant went so far as to forge documents from American companies in order to make the Department of State believe that the beneficiary was in fact coming to the US to fill a particular position with that company. Agents even conducted site-visits at the defendant's business headquarters in Henrietta, NY, which was empty, and had all of the trademarks of a "business front."  Agents discovered that all nine of the test sample visa applications they reviewed were fraudulent to some extent.

A specific example of the defendant's fraud, which he admitted in the factual basis of his plea agreement, involved a false and forged labor contract that the defendant submitted in February 2013.  In that petition, which the defendant affirmed to be true under the penalty of perjury, the Indian beneficiary was to work at end-client West Services DBA Thomson Reuters (Reuters). As part of the petition, the defendant submitted a purported employment contract on Reuters stationary, which the defendant represented was the actual contract entered into between the Indian beneficiary and Reuters. The defendant submitted additional paperwork in conjunction with the application, under warning against false statements, in which he represented that the Indian beneficiary was to work at Reuters. When questioned by Agents, Reuters management confirmed that Reuters never had a contract with the defendant or the Indian beneficiary, and that the contract and petition submitted by the defendant listing Reuters as the employer was stolen, false, fraudulent, forged, and used

without the knowledge or consent of Reuters.  As confirmed by his plea agreement, this pattern was repeated by the defendant on multiple occasions between 2011 and 2017.

The defendant states on page 15 of his sentencing submission that "since it's inception, Prosoft IT has properly sponsored 114 H1B1 visa applicants."  This number, if not wholly inaccurate, is highly exaggerated. As stated above, the test sample of the defendant's applications examined in this investigation revealed a 100% fraud rate.  The 114 remaining applications were not reviewed, in part, based on the labor intensive nature of the examination process.  Given the pervasiveness of fraud in the test sample, it is unimaginable that the defendant's remaining 114 applications were legitimate in all respects.  Fraud was the defendant's way of doing business with the H-1B program.  There is no reason to believe that he did not employ similar tactics in the 114 applications referenced by the defense.

## The defendant profited from the scheme by charging illegal fees and accepting referral fees from American companies.

The defendant enriched himself through his visa fraud by collecting unlawful fees from the alien beneficiaries, and bringing into the United States a ready supply of workers, desperate to find employment in the US technology sector.  Rules prohibit H-1B petitioners from charging certain fees to alien beneficiaries in connection with visa applications.  The defendant utterly ignored this rule, collecting unlawful fees directly from the alien beneficiaries.  The alien beneficiaries, who were eager to enter and work in the United States, paid the defendant without objection. Since the defendant lied about where the aliens would work upon their entry to the United States, some did not have a legitimate position waiting

for them, contrary to the defendant's sworn representations to the Department of State.  These individuals depended on the defendant upon their arrival to the United States, until he could locate permanent positions for them.

The defendant's scheme is commonly referred to as "benching" by law enforcement. By bringing aliens into the United States under the false pretense that an American employer had already hired the alien, the defendant built up a "bench" of available workers, that he could easily shift into permanent positions as they became available.  The H-1B visa program is designed to ensure that a visa is granted only if a US employer demonstrates that a foreign national is vital to a position within the US, and that an American is not available to fill it. Since the defendant lied as to where the foreign nationals would be employed, the defendant secured entry for many aliens that otherwise would not have been admitted to the US.  Since the defendant's beneficiaries did not have ready, available employment, they had an obvious incentive to accept the first position to become available to them, regardless of wages or working conditions. By fraudulently creating a pool of cheap, immediately available labor, the defendant harmed American workers and individuals working lawfully within the H-1B program.

Not surprisingly, the H-1B visa program has come under recent scrutiny.  Proponents argue that the program allows companies to fill a talent-gap within the United States and enables the United States to draw and retain the best and brightest minds in fields such as medicine, technology, and engineering.  Opponents argue that employers hire H-1B workers at lower wages than they would pay Americans to do the same work.  They assert that the H-

1B program is a way of in-sourcing cheap labor from abroad to replace American workers. One would not have to look far to find news stories of American workers who report being displaced from their jobs in favor of H-1B visa recipients, often being forced to train their own replacements before being terminated.

The pros and cons of the H-1B visa program are complicated and subject to continuous debate. Whether the H-1B visa program is beneficial or detrimental to the United States and American workers is not a question that the Court should consider. Whatever ones' view of the H-1B visa program as a whole, it is clear that the fraud that the defendant perpetrated is detrimental to both American workers, and those who lawfully receive H-1B visas. By bringing aliens into the United States under false pretenses, the defendant and others like him flood the job market, so that their beneficiaries secure positions that may otherwise have been awarded to lawful H-1B visa recipients or American workers. The H-1B program has internal safeguards to combat the importation of cheap labor, protect American workers, and to ensure that H-1B recipients do not adversely impact wages and working conditions. Through his crimes, the defendant undermined those protections.

**The Court need not rule on the defendant's untimely objections.**

On December 3, 2018, the defendant filed objections to multiple paragraphs within the PSR. Pursuant to Guidelines Section 6A1.2(b), the defendant's objections should have been filed on or about November 19, 2018, in order to provide the Court, probation, and the government sufficient time to process the objections and respond appropriately. Probation

has indicated to the government that it will not explore the defense objections, due to their late filing.

None of the objections, if granted, would impact the defendant's sentencing guidelines calculation, or the prison sentence that the government believes the Court should be impose. Therefore, pursuant to Fed. R. Crim. P. 32(i)(3)(B), the Court could correctly determine that formal rulings are not necessary with respect to each objection, and sentencing may proceed as planned.

### If the Court must rule, the defense objections should be overruled.

During his plea colloquy, the defendant specifically admitted that he defrauded the H-1B visa program for a period of at least 6 years.  He admitted to the Court that he owned Prosoft IT and operated Reliance IT, which is nominally owned by his wife.  The defendant admitted in the factual basis of his plea agreement that he multiple submitted false and fraudulent visa applications through both companies.  (*See* Plea Agreement at ¶¶ 4(d) through 4(j)).  He admitted that he provided false labor contracts, false end client information, and other materially false statements to the Department of State, and that he did so knowingly. As an example, the defendant admitted to a particular fraudulent application that he submitted in 2013 involving Thomson Reuters.  In that transaction, he admitted that he knowingly submitted a false, fraudulent, and forged work contract in support of a visa application for an Indian national.  His purpose was to defraud the Department of State and gain entry for an Indian national, that otherwise had no right to live and work in the United States.

The defendant now objects to portions of the PSR that involve the very type of conduct that he admitted during his plea colloquy.  As explained below, his assertions are without merit, and are belied both by the factual basis of his plea agreement and the credible evidence discovered during the course of this investigation.  Accordingly, his objections should be overruled.

<u>PSR Paragraph 22</u>

The defendant object to this paragraph, and alleges that he did not charge illegal fees to beneficiaries and did not engage in monetary transactions of $10,000 or more involving money derived from visa fraud.  This objection, which relates to Arokiam Dhiraviyam (Beneficiary 1), must be overruled.   DHIRAVIYAM provided a sworn written statement to the US Consulate General, in Chennai, India, which is attached hereto as Gov. Exhibit A, stating that he "paid the processing fees of $3500 to Prosoft IT."  This fee was illegal and the attached sworn statement provides a clear factual basis for the Court to overrule the objection concerning illegal fees charged by the defendant.

The investigation also clearly revealed that the defendant engaged in monetary transactions in excess of $10,000 (money laundering) involving visa fraud proceeds.  As set forth in the Criminal Complaint in paragraphs 23 through 27, and in the sworn Forfeiture Complaint filed in this matter, the Department of Homeland Security engaged in an extensive financial investigation in which they confirmed that the defendant laundered the proceeds of his visa fraud through multiple transactions.  These transactions provided the legal basis for the forfeiture of money and property as set forth in paragraphs 23 through 26 of the plea

10

agreement. The defendant's assertion that he did not engage in such transactions is entirely contradicted by the sworn allegations in both complaints, which could be proven at a hearing. A hearing, however, is not necessary. The fact that the defendant voluntarily surrendered the money and property listed in the plea agreement, for an approximate value of $1,000,000, clearly demonstrates that the money was linked to his crime of conviction: visa fraud. It is unclear how the defendant could possibly challenge this portion of the PSR, when he readily agreed to forfeiture of the same funds as part of his plea. The defendant's objection to paragraph 22 is absurd, is contradicted by his own plea and forfeiture agreement, and should be overruled.

<u>PSR Paragraphs 25 and 29</u>

This objection should be overruled. As referenced above, Beneficiary 1 (Arokiam Dhiraviyam) provided the sworn statement attached as Gov. Exhibit A. In the statement, he swore to a US Consular official that "…I have paid the processing fees of $3,500 to Prosoft IT." This sworn statement was taken at the time of the DHIRAVIYAM's visa interview at the US Consulate and is far more reliable than the unsworn letter that he provides the Court, which was written nearly 5 years later, in support of the defendant's sentencing objections. The veracity of the exhibit provided by the defense is highly questionable. It was obviously secured by the defendant for the sole purpose of his sentencing submission, and unless the defendant secures this person's attendance and live testimony, the government submits that it does not meet the reliability threshold to be considered in this case. The objection should be overruled.

11

PSR Paragraphs 35 and 36

This objection should be overruled.  Attached as Gov. Exhibit B is the sworn statement by Aparna CHERUVU (Beneficiary 3) to a US Consular official at US Consulate General Hyderabad, India, dated November 21, 2013, in which she states all of the documents she submitted in support of her H-1B visa application were fake and provided to her by Ajaneyulu KATAM.  She also states that she and KATAM are related.

Also attached as Gov. Exhibit "C" is an email sent by the Kentucky Consular Center Fraud Prevention Unit to the President of New York Tech Partners (NYTP).  NYTP was the supposed end-client work location for Aparna CHERUVU.  The President of NYTP stated in that email that they did not have a relationship with Prosoft IT, and that they never issued the documents included in the H1B application on NYTP letterhead and signed by Giri RAMARAJU.

Also attached as Gov. Exhibit D, is the handwritten and signed statement from Giri RAMARAJU, which he provided Agents during the course of this investigation. RAMANRAJU states that he and KATAM are friends, and that KATAM had asked him to sign documents in various H1B applications in which both he and KATAM knew that NYTP had no actual knowledge of the petitions and that KATAM would find the alien beneficiaries positions only after they arrived in the US, in violation of the visa fraud statutes. RAMANRAJU has apparently provided the defendant with a letter stating contrary facts in support of the defendant's PSR objections.

Notably, Exhibit D also states that the defendant and RAMANRAJU are close friends, have held a mortgage for a home together in Rochester, NY, and engage in regular social activities.

RAMANRAJU, although not charged, is clearly culpable as a co-conspirator of the defendant.  He aided and abetted the defendant's visa fraud, and there is reason to believe that RAMANRAJU'S and CHERUVU's recent submissions to defense counsel are false and that both individuals have violated Title 18, United States Code, Section 1001.  Should  the Court order a hearing where either witness is called to testify, both will require separate representation by counsel in order to protect their 5th Amendment rights.  This is particularly true for RAMANRAJU, who provided a detailed sworn statement implicating himself as a co-conspirator in visa fraud with KATAM.

<u>PSR Paragraphs 37 through 39 and 44 through 45</u>

The objections to these paragraphs should be overruled.  Gov. Exhibit C, the email sent by the Kentucky Consular Center Fraud Prevention Unit to the President of New York Tech Partners (NYTP), belies the defendant's and RAMANRAJU's claim that the petition referenced in this paragraph was legitimate.  NYTP was the supposed end-client work location for Rupesh VELURU and Sunil GANGAVARAPU.  The President of NYTP clearly states in Exhibit C that NYTP did not have a relationship with Prosoft IT, and that they never issued the documents included in the H-1B applications on NYTP letterhead and signed by Giri RAMARAJU.

In addition, as stated above, RAMANRAJU provided a sworn statement that he and KATAM are friends, and that KATAM had asked him to sign documents in various H-1B applications involving NYTP, in which NYTP had no actual knowledge of the petitions. This is perhaps the most clear instance of visa fraud perpetrated by the defendant, and is a specific form of fraud that he admitted in the factual basis of his plea agreement. That the defendant now disputes these facts is astounding. The objection should be overruled.

<u>PSR Paragraphs 50 through 52</u>

The objections to these paragraphs must be overruled. Attached as Gov. Exhibit E is a Report of an Interview conducted by Diplomatic Security Service Special Agents with Gadam HARIKRISHNA (Beneficiary 6) on January 30, 2017. During the interview, HARIKRISHNA explained that he was benched during his employment with Reliance IT, at one point stating that he spent most of his working time with Reliance IT looking for an actual IT contract. HARIKRISHNA also admitted that he paid to KATAM $1500 for premium processing of his H1B visa application. However, KATAM never filed for the premium processing. This is a clear example of the illegal fees and benching scheme that KATAM engaged in during his 6 year visa fraud period.

Additionally, KATAM asserts that because Reliance IT was the petitioner and Prosoft IT was the end-client for this petition, he is less culpable. This argument is ridiculous to the point of being obstructive. KATAM has signed multiple H-1B petitions and documents as the owner and de facto President of Reliance IT and Prosoft IT, and told Agents during an interview that his wife was only the signatory for Reliance IT, but that he was responsible for

14

the company's operation and the petitions it submitted.  In addition, KATAM admitted during his plea colloquy at Paragraph 4(d) that he was the operator of Reliance IT.  That he now attempts to distance himself from Reliance is not consistent with his direct admission to this Court.  This objection should be overruled.

<u>Paragraphs 53 and 54</u>

The objections to these paragraphs must be overruled.  Attached as Gov. Exhibit F is a  Report of Interview conducted by Diplomatic Security Special Agents in Boston, MA on March 23, 2017 of Aruna CHAGANTI (Beneficiary 8).  In this interview, CHAGANTI stated that she worked at Prosoft IT services in Rochester, NY from June through July of 2016 as a Senior Program Analyst.  She stated that Prosoft IT did not have the resources to fulfill the contract and she had to change positions.  The petition submitted by the defendant was therefore fraudulent as it was clearly never his intent that CHAGANTI would work permanently for Prosoft.  The goal was to get CHAGANTI into the United States, by naming Prosoft as the petitioner, when in fact, Prosoft had no intention of permanently employing CHAGANTI.

In addition, the defendant's claim that Prosoft, as the end-client company, had no responsibility or knowledge of the visa fraud perpetrated with respect to CHAGANTI is absurd.  A review of the I-129 petition packet (part of the total visa application) reveals multiple documents that were submitted directly by Prosoft in support of CHAGANTI's visa, indicating that KATAM was not only aware of the fraudulent petition by CHAGANTI, but that he participated in it.  In addition, during his interview with Agents, KATAM admitted

15

that he recalled and was familiar with CHAGANTI's petition.  This utterly contradicts his claim that he was not involved in this transaction.  His argument that, as the end client for this petition, he is not responsible for the accuracy of its contents, is not accurate.  The defendant would have the Court believe that he had no involvement in this fraudulent petition, yet he admitted being familiar with it and does not dispute that CHAGANTI was "employed" by Prosoft from June to July 2016 until she could find a permanent position. There is no doubt that KATAM knowingly participated in the submission of this fraudulent petition.  He is responsible for aiding and abetting in its submission, and his attempt to distance himself from it is indicative of his dishonest nature.

### PSR Paragraphs 55 through 57

This objection should be overruled.  Attached as Gov. Exhibit G is the Report of an Interview conducted by two Diplomatic Security Special Agents in Redwood City, CA of Udaya Bhaskar NEDUNURI (Beneficiary 8).  The defendant's assertion that because Reliance IT was the petitioning company somehow shields him from culpability is absurd. As stated above KATAM has signed petitions as the owner and President of Prosoft and the operator of Reliance. He confirmed during his interview with Agents that he is responsible for the operations of Reliance.  He also admitted to operating Reliance during his plea colloquy.  In other words, Reliance was KATAM's company.  He has confirmed to the government that he, and not his wife, was responsible for visa fraud perpetrated through that company.  As indicated in Exhibit G, NEDUNURI told Agents that when he contacted Reliance IT, he spoke with KATAM, that KATAM was his main point of contact, and that

16

it was KATAM who would locate a new work contract for NEDUNURI.  NEDUNURI appears to never have met CHERUVU or interacted with her in any meaningful way. This confirms that KATAM was in control of Reliance IT and was responsible for the fraud associated with this petition.  NEDUNURI also confirmed in his interview that he had no intention of ever going to Rochester, NY and that KATAM knew this, despite the I-129 petition stating he would work at the Prosoft IT address in Rochester.

It should also be noted that the defense states on Page 5, Para 3 that the petitioner has no control over the actions of the beneficiary, and while this is true, the petitioner does have the responsibility of accurate and truthful information in the original I-129 petition.  Here, the I-129 submitted by Reliance IT, through KATAM, on behalf of Prosoft, for KATAM, was inaccurate and untruthful.

<u>PSR Paragraph 58</u>

The defendant's objection to this paragraph should be overruled. Once again, the defense argues that KATAM is somehow disconnected from Reliance IT and therefore is not responsible for the actions of that company in connection with visa fraud.  As stated above, multiple beneficiaries have stated KATAM represented himself as the owner of Reliance IT. He is also a signatory on all the Reliance IT bank accounts, is married to the "on-paper" owner of the company (his wife CHERUVU).  KATAM has stated during interviews with Agents that he was responsible for the operations of Reliance IT.  KATAM personally confirmed, in the presence of his attorney, that it was he, not his wife, that was responsible for visa fraud through Reliance.

When interviewed about the subject petition of this paragraph, KATAM admitted to Agents that he recognized and knew of the I129 petition for Vijay YADAV (Beneficiary 9). Attached as Gov. Exhibit H is the Report of Interview with YADAV with Agents.  In this report, YADAV states that, in contradiction to the visa application submitted by KATAM, he was to work for Reliance IT in Rochester, NY.  YADAV never worked in Rochester, but instead went directly to work for another company in Texas.  YADAV further stated that he would speak with KATAM at least once a week, and clearly indicated that KATAM was his only real point of contact with Reliance IT.  His only contact with CHERUVU occurred when he was in India in 2014.  This demonstrates that KATAM was responsible for this petition, that he was responsible for Reliance IT, and that he knew that YADAV was never going to work at Prosoft in Rochester.  The defendant's objection to this paragraph must be overruled.

Pursuant to Fed. R. Crim. P. Rule 32(i)(3)(B), the Court need not resolve the defendant's objections in order to fairly administer sentence in this case.  None of the objections raised by the defense change the fact that the defendant engaged in a 6 year pattern of criminal conduct in which he defrauded the United States for his own profit.  The objections have no bearing on the guideline calculation, and do not change the fact that the defendant unlawfully secured the entrance of aliens into the United States and their employment in highly valued technology positions.

To the extent that the Court must resolve the defendant's objections, they should be overruled.  The defendant's assertions are entirely contradicted by the interviews and sworn statements gathered during the investigation of this matter as described above.  Some of these

individuals now provide contradictory, unsworn statements to the defense for sentencing. These individuals have a personal relationship with the defendant, whether by relation, social networking, or by the fact that they may feel indebted to him for assisting their entry to the US.  They are also culpable in this scheme, because they knowingly and directly benefitted from the fraud as beneficiaries.  The reliability of their recantations, which were conveniently obtained by the defendant in preparation for sentencing, is highly suspect.  Their recantations also subject them to possible criminal penalties and prosecutions for violations of Title 18, United States Code, Section 1001. In short, they have a clear motive to now lie for the defendant and for themselves.

Additionally, in his plea colloquy, the defendant readily admitted to engaging in 6 years of continuous visa fraud, for which he willingly forfeited nearly $1,000,000 in cash and property.  His objections to the PSR, and claims that he did not engage in the activity specified therein, are belied by his plea colloquy and the information gathered by law enforcement.  His objections are absurd at best and outright dishonest at worst.

Pursuant to the commentary notes appended to Guidelines Section 6A1.3 involving resolution of disputed factors, to the extent that the Court determines that it must resolve the disputed facts, the appropriate standard of proof is preponderance of the evidence.  The government respectfully submits that it has carried that burden by this written submission and its exhibits and the defense objections should be overruled.

## CONCLUSION

The defendant knowingly and intentionally defrauded the United States for a period of almost 5 years.  One hundred percent of the defendant's H-1B petitions reviewed by law enforcement were indicative of fraud.  Based on the forfeiture components of the plea agreement, and interviews of the various H-1B recipients that he sponsored, it is clear that the defendant profited immensely from his crimes.  Whatever one's view of the H-1B visa, it cannot be disputed that fraud within the program is detrimental to the United States, American workers, and those who operate lawfully within the H-1B program.

Through this investigation and others, the United States Department of State has learned that abuses such as this are widespread, and often go undetected and unpunished. This case must serve to deter others from defrauding the H-1B and other visa programs. Accordingly, the government respectfully requests that this Court impose a guideline sentence of imprisonment between 12 and 18 months.  Such a sentence would send a strong message of deterrence to those who defraud the United States for their own personal profit.

DATED:      Rochester, New York,
            December 6, 2018

                              JAMES P. KENNEDY, JR.
                              United States Attorney
                              Western District of New York


                        BY:   s/KYLE P. ROSSI
                              Assistant U.S. Attorney
                              U.S. Attorney's Office
                              100 State Street, Suite 500
                              Rochester, New York 14614

TO:    Lawrence Kasperek, Esq.
       Jessica Lewis-Sleet, U.S.P.O.