# Exhibit A

CSD Scanned Document for AROKIAMDHIRAVIAM (MDR 0000228499 0001)          Page 1 of 1

## Sworn Statement

I, __DHIRAVIAM     AROKIAM_____, born in __DINDIGUL__, __INDIA__
(Last Name)        (Given Names)                    (Place of Birth)
on __▮▮__/__▮▮__/__▮▮__, hereby make the following statement voluntarily to
(DD)   (MM)   (YY)
_____, who has been identified to me as an employee of the
US Department of State under no threat or promise. I understand and agree that this
statement may be used in an administrative or judicial proceeding. Further, I agree to
appear in person as a witness should this be deemed appropriate and necessary.

Prosoft IT is my employer and they have
offered me as employment and filed my
H1B petition and I have paid the processing
fees of $3500 to prosoft IT.

Prosoft IT had provided an opportunity to
work with the SQL DATA solutions who is a
client for prosoft IT. I will be working on
a project Rental Management System.
While working in US prosoft IT will provided
all the Expenses and Salary to me and
I need to report to mr. RAMU who is a
HR Manager.

While working with the Client SQL DATA solutions
project I need to report to Mr James who is
a project manager.

*I hereby swear or affirm that the information contained in this statement is the truth to
the best of my knowledge.*

___A. Dhiraviam_____(Signature) __17 - APR - 2012__(Date)

Subscribed and sworn to before me on this, the __17th__ of __April__, 20__12__.

_____(Signature) __Benjamin Embury__(Printed Name)

US Consulate General Chennai          ***          Page 1 of _____

# Exhibit B

CSD Scanned Document for APARNACHERUVU (HYD 0000114568 0001)                    Page 1 of 1

## STATEMENT BY APPLICANT

I Cheruvu Aparna President of H.No. ███████ Bhaghyanagar, Ongole. applied for H1B visa at US Consulate Chennai Hyderabad.

I had completed B.Sc in kurnool. Then learned PGnDCA and then I learned some Programming languages Unix, Oracle, Java. Then I joined as a faculty in Chaitanya Academy. Then I moved to Sonu's Software Solutions as a Programmer analyst. Then I got offer in Consentech company.

The above documents what I submit was fake. I didn't pay anything to the employer. All these documents came from US Kalam Anjaneyulu, the president of Psysoft IT. I don't have any work experience in Sonu's & Consentech, and all the work experience letters given by me are fake.

I too learned Java Programming language. For this experience I can will go there and can do job on this purpose. Kalam Anjaneyulu will provide a job for me in US. He is my sister-in-law's husband.

I swear (affirm) that I know the contents of this affidavit signed by me and the statements are true and correct.
ఈ ప్రమాణపత్రంలో వివరించిన విషయములన్నియు నాకు తెలిసినవనని, ఈ వాంగ్మూలం నిజమైనదని మరియూ సరైనదని ప్రమాణ

పూర్వకంగా సంతకం పెట్టుచున్నాను.

_Aparna_
Signature of deponent

Subscribed and sworn to (affirmed) before me this _twenty first_ of _November_ 2013 at the American Consulate General, Hyderabad.

Round Stamp

Vice Consul
Signature of officer Administering oath

# Exhibit C

**KCCFPU Mailbox**

| | |
|---|---|
| **From:** | Dilip Singh <████nytp.com> |
| **Sent:** | Wednesday, May 04, 2016 3:29 PM |
| **To:** | KCCFPU Mailbox |
| **Cc:** | Brown, Michael R |
| **Subject:** | RE: Document Verifications for CHERUVU, GANGAVARAPU, and VELURU (Privacy/PII) |

Hello Mr. Brown

I have reviewed the attached document that you sent for verifying intended employment for Aparna CHERUVU, Sunic GNAGAVARAPU and Rupesh VELURU and am afraid to say that we did not intend to hire anyone of these individuals. We in fact have no knowledge of the petitioner, Prosoft IT, the Synergy Data mapper project and the above named beneficiaries. We are not aware that any such document has been sent on our behalf to USCIS. Please see responses to the specific questions asked by you in red

- What is the current/ongoing relationship between Prosoft IT Services Inc and New York Technology Partners Inc?
  We do not have any current/ongoing relationship with Prosoft IT Services, Inc.

- If there is no direct relationship between Prosoft IT Services Inc and New York Technology Partners Inc, please provide the name and contact information of any intermediary staffing agencies.
  We do work with various staffing agencies who help us support our ongoing requirements but we do not know if any of those companies use Prosoft IT for supporting our ongoing requirements

- Looking at the letters we sent to you – can you verify that this is your company's letterhead or stationery? If it is not, please describe what is different.
  The letters that you attached have our logos but these letters are not issued with our consent

- After reviewing the information contained in the letters and documents–
  ➢ Has it been altered? – We never issued these letters
  ➢ Do the job description and dates mentioned correspond to the individual named in the letters and documents? – We do not have a project named Synergy Data Mapper, we in fact moved out of our offices located at 525 Washington Blvd, Jersey City, NJ on 12/31/2014 so the work address mentioned is not correct. This letter might not even have been issued by Giri Ramaraju as he knew that our offices have moved from 525 Washington Blvd to 111 Town Square Place.
  ➢ Are the services listed ones your company expects to receive? – No they are not
  ➢ Are the dates of service correct? – No they are not

- Looking at the signatory of the letters and documents – (*If you are the signatory, it is preferred that the following questions be answered by another person within the company. Also, please provide their name, title and contact information*.)

  ➢ Is Giri RAMARAJU employed by your company? If yes, what is his title?
    Giri Ramaraju is not employed by our company
  ➢ If the person is not a current employee, has he ever worked there? If yes, what were the dates of employment?

Giri Ramaraju did work with our company as IT Business Analyst from 02/01/2011 to 7/31/2015
➤ Is Giri RAMARAJU authorized to sign this type of document?
  No he was not authorized to sign this type of documents
➤ Does Giri RAMARAJU have the authority to send the attached document on behalf of your company?
  He did not have authority to send such documents
➤ Can you confirm the signature belongs to Giri RAMARAJU?
  I am not sure if Giri Ramaraju signed these documents but the signature we have for him in his personal file is different from what is on the attached documents that you sent us.

• Does your company use stamped and/or electronic signatures?
  We have not started using electronic signature yet

I hope you have all the answers that you need on this, please let me know if you need anything else.

Thanks,

_____
**Dilip Singh | New York Technology Partners**
Direct: 201.448.8163 | Cell: 732.261.7899 | dilip@nytp.com

---

**From:** KCCFPU Mailbox [http://redirect.state.sbu/?url=mailto:KCCFPU@state.gov]
**Sent:** Wednesday, May 04, 2016 1:15 PM
**To:** 'dilip@nytp.com' <dilip@nytp.com>
**Cc:** Brown, Michael R <BrownMR2@state.gov>
**Subject:** Document Verifications for CHERUVU, GANGAVARAPU, and VELURU (Privacy/PII)

Hello,

The U.S. Department of State occasionally contacts petitioners and client companies involved with Non-Immigrant visa petitions in order to verify that information presented to the U.S. Consulate is accurate and valid. The attached documents were presented in support of a multiple visa petitions. We requests that you answer the below questions as soon as possible.

Beneficiaries: Aparna CHERUVU, Sunic GANGAVARAPU, and Rupesh VELURU
Petitioner: Prosoft IT Services Inc

• What is the current/ongoing relationship between Prosoft IT Services Inc and New York Technology Partners Inc?

• If there is no direct relationship between Prosoft IT Services Inc and New York Technology Partners Inc, please provide the name and contact information of any intermediary staffing agencies.

• Looking at the letters we sent to you – can you verify that this is your company's letterhead or stationery? If it is not, please describe what is different.

• After reviewing the information contained in the letters and documents–
  ➤ Has it been altered?
  ➤ Do the job description and dates mentioned correspond to the individual named in the letters and documents?
  ➤ Are the services listed ones your company expects to receive?

➢ Are the dates of service correct?

• Looking at the signatory of the letters and documents – (*If you are the signatory, it is preferred that the following questions be answered by another person within the company.  Also, please provide their name, title and contact information*.)

  ➢ Is Giri RAMARAJU employed by your company?  If yes, what is his title?
  ➢ If the person is not a current employee, has he ever worked there?  If yes, what were the dates of employment?
  ➢ Is Giri RAMARAJU authorized to sign this type of document?
  ➢ Does Giri RAMARAJU have the authority to send the attached document on behalf of your company?
  ➢ Can you confirm the signature belongs to Giri RAMARAJU?

• Does your company use stamped and/or electronic signatures?

Thank you for your assistance with this inquiry.  A complete response by **10MAY2016** will help prevent any delays in the visa process.  If you have any questions or concerns, please don't hesitate to contact me.

Respectfully,

**Michael Brown**
*Visa Support Services*

Support Contractor – FCI Federal
U.S. Department of State Visa Services Office
Phone: 606-526-7551
Email: brownmr2@state.gov

Any information in this transmission pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential under Section 222 (f) of the Immigration and Nationality Act (INA) [8 U.S.C. Section 1202]. Access to and use of such information must be solely for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States under INA 222(f) and as specified in FAM guidance. If you have received such information in error, do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender as soon as possible.

This email is *Sensitive but Unclassified* based on the definitions provided in 12 FAM 540.

Privacy/PII
This email is UNCLASSIFIED.

# Exhibit D



**United States Department of State**
**Diplomatic Security Service**
**Bureau of Diplomatic Security**

*Resident Agent-in-Charge*
*111 Genesee St.*
*Buffalo, NY 14203*

### Sworn Statement

Place: 251 ~~████~~, West Henrietta, NY- 14586
Date: 11/27/2017

I, Seshagiri Rao Ramaraju, hereby make the following
statement voluntarily to _____, who has been identified to me
as a Special Agent of the Diplomatic Security Service, United States Department of State.

I came to Rochester, NY in ~~Feb~~ Feb' 2011
and eventually happen to meet with Anjan Katam
through my cricket sporting network in Rochester, NY.
During that time, because he is also into same
line of Business, i signed the Master Service agreements
with his company, with absolutely no intention of
benefiting financially or by any other means but
purely out of the friendly relation with him.
However, it was an intention ~~for that~~ he bring
the resources here and put them on
other project assignments and my role was
only involved for signing the contract and not
related to any visa related things.
After 2015 i left Newyork Tech Partners
and ~~pursued~~ pursued other jobs and since then
i meet him just to maintain a ~~friendly~~
relation ~~and~~ ~~too~~ ~~the~~ occasionally (once in a
month or so)...

I consent with this statement that i will
cooperate fully if there is any other information
required in future.

Page 1 of 3 Pages

**United States Department of State**
**Bureau of Diplomatic Security**



Also, essentially Mr. Katan's has approached me to sign these Contract in both ideally these are going to be on future assignment projects and all these resources are to be placed at other client locations Other than new york Tech partners. The last time i met was Couple weeks ago and it was a friendly Conversational meeting. The home i'm currently Co-signed by Anjan is not related to any of these Transactions but any further information required, i will be fully Cooperative

I have read the above statement which consists of _3_ pages. I hereby swear or affirm that the information contained in this statement is true and correct to the best of my knowledge.

Signature: _____

Print Name: _Seshagiri Rao Ramaraju_

Address: ▇▇▇ ▇▇▇ ▇▇▇
_West Henrietta, NY - 14586_

Telephone: _732 - ▇▇ - ▇▇_

Subscribed and sworn before me on : _11/27/2017_
(date)

S: _____                          S: _____
**Special Agent**                            **Special Agent**
**United States Department of State**         **United States Department of ~~State~~** Labor
**Burea of Diplomatic Security**             ~~Bureau of Diplomatic Security~~ OIG OI LFF
**1 Executive Dr., 5th floor**               ~~1 Executive Dr., 5th floor~~ 138 Delaware Ave
**Fort Lee, NJ 07024**                       ~~Fort Lee, NJ 07024~~ Buffalo, NY 14202

Page _3_ of _3_ Pages

# Exhibit E



U.S. Department of State

**DIPLOMATIC SECURITY SERVICE**

**FALSE STATEMENTS WARNING**

Before we ask you any questions, you are being advised of the following information regarding Title 18 United States Code, Section 1001, False Statements.  In any matter within the jurisdiction of any department or agency of the United States:

- It is a criminal violation of federal law to make any false, fictitious, or fraudulent statement or representation.

- It is a criminal violation of federal law to make or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry.

- It is a criminal violation of federal law to falsify, conceal, or cover up by any trick, scheme, or device a material fact.

- Whoever knowingly and willingly violates this statute may be imprisoned for five (5) years or, if the offense involves international or domestic terrorism, imprisoned for eight (8) years.

**ACKNOWLEDGEMENT**

I have read this notice or it has been read to me, and I understand this notice.  No promises or threats have been made and no pressure or coercion of any kind has been used against me.  I know and understand what I am doing.

| 01/30/2017 | 1:35 pm | _____ |
|------------|---------|-----------------|
| Date | Time | Signature |

| _____ | _____ |
|-----------------|-----------------|
| Witness Signature | Witness Signature |

| Orozco, Luis | Joshua Frazar |
|--------------|---------------|
| Witness Name | Witness Name |

DS-7687
05-2013

SBU (LAW ENFORCEMENT SENSITIVE)

 **Diplomatic Security Service**
**Buffalo Resident Office**

**IMS Case Report**

| DS Case Number:<br>VF-2016-01098 | Case Title:<br>Pro Soft IT | Report Date:<br>01/30/2017 |
|---|---|---|
| Case Type:<br>CRIMINAL | Investigative Program Type:<br>VISA FRAUD | Date Investigated:<br>01/30/2017 |
| Case Impact:<br>MEDIUM | Case Status:<br>OPEN Investigation / Analysis Ongoing | Open Date:<br>12/12/2016 |
| Report Type:<br>LEAD INTERIM | Report Title: | Report Status:<br>DRAFT |

MOI - Interview of Ajay HARIKRISHNA
1/30/2017: Interview began: 1330 – 1500

On 1/30/2017 at 1330, SA Orozco and SA Josh Frazar interviewed Ajay Gadam HARIKRISHNA (DOB: ▮▮▮▮▮) at the Deferred Inspection office of Customs and Border Patrol (CBP) at 630 Sansome Street, San Francisco Ca. Also present during the interview was CBP Officer Hernandez-Falliner and Attorney Jessica L. Marks (In-house counsel for Inovant LLC). The interview was non-custodial and HARIKRISHNA was not read his Miranda rights.

SA Orozco began the interview by introducing himself and the other parties present. HARIKRISHNA appeared nervous but expressed his deep willingness to cooperate with the government. SA Orozco explained that he was there to ask him some questions in regards to his H1B application and employers. HARIKRISHNA agreed to fully cooperate with SA Orozco and the answer any questions. SA Orozco asked Attorney Jessica Marks to sit behind HARIKRISHNA as attorneys are not allowed to provide legal advice to clients during deferred inspection interviews.

SA Orozco asked what his current address was and HARIKRISHNA replied: 2000 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Fremont Ca ▮▮▮▮▮. He explained that he's single, never married and doesn't have any children. He was recently in India (southern part – Chennai, India) visiting his family. HARIKRISHNA went onto explain that he was first admitted to the US in 2010 on an F1 (Student) visa when he attended Carnegie Mellon University in Pennsylvania, Pa. He achieved a Masters of Science degree in computational biology. HARIKRISHNA provided official transcripts to SA Orozco with an overall GPA of 3.46. HARIKRISHNA stated he was on the F1 visa for approximately 18 months.

HARIKRISHNA explained that he's proficient in Java/Python computer languages and has 5+ years of computer programming experience. He builds applications and writes computer software code. HARIKRISHNA explained that during school he, like many other graduate students, search for employment via the standard process of Linked-In, indeed.com, monster.com, websites. HARIKRISHNA stated that the process is straight forward where he found job postings, and applied to the website link. Once contacted he would undergo a phone or in person interview.

HARIKRISHNA stated that he first worked for a company by the name of SDLC partners after he graduated from Carnegie Mellon.

| Reporting Official:<br>Orozco, Luis J | Distribution: |
|---|---|
| Approving Official: | |

This report is the property of the U.S. Department of State, Diplomatic Security Service. Neither the report nor its contents may be disclosed to unauthorized persons without the expressed permission of the Diplomatic Security Service.
SBU (LAW ENFORCEMENT SENSITIVE)

Page 1

**SBU (LAW ENFORCEMENT SENSITIVE)**
DS# VF-2016-01098
LEAD INTERIM: 01/30/2017
05:00 AM GMT

He worked with SDLC as a Java Programmer with an annual salary of approximately $80k annually.  He worked with the company on an OPT visa until he received his H1B visa with a different company in April 2014.  In April 2014, HARIKRISHNA changed employers to Yellowpages.com in Glendale Ca. He worked for Yellowpages.com from April 2014- May 20, 2016. He received an H1B via Yellowpages.com. His supervisor at Yellowpages.com was Drew Stucksberry (Sr Director). While employed at Yellowpages.com his salary was approximately $103k annually.  While at yellowpages he worked on big data applications and HADOOP technology.

HARIKRISHNA stated that he wanted a change and wanted to try "contracting".  He heard about Reliance IT from some friends and contacted them via email. HARIKRISHNA stated that his friends told him that "Reliance wouldn't try to exploit candidates for immigration". He contacted them via phone, email and one skype session.  His only contact at Reliance IT was Anjan KANTAM and Bashar (Last name unknown).  HARIKRISHNA stated that Reliance IT filed for an H1B visa in May 2016 for him and he began working for them immediately on a "I-797 receipt of notification" (Note: a H1B beneficiary can begin to work after receipt of notification and prior to H1B approval if the employer chooses).

HARIKRISHNA explained that he was employed with Reliance IT from May 26, 2016 until Nov 2016 as a "contractor". HARIKRISHNA stated that he started working on a contract for "Stubhub/Ebay" on June 23, 2016. When SA Orozco asked what work he was performing for Reliance IT between May 26 and June 23, HARIKRISHNA said "I was employed with Reliance IT, I was not contracting during that time. I was pretty much looking for contracts". HARIKRISHNA stated he "was not contracting during that period and was interviewing for contracts". He stated that he was NOT working on any in-house projects for Reliance IT. He said it was the "marketing phase and didn't do a single bit of coding that month". He stated he interviewed with Disney and Ebay and searching for contracts in California.  HARIKRISHNA stated his pay rate at Reliance IT was $68hr. HARIKRISHNA provided SA Orozco with seven paystubs covering 5/1/2016 – 11/30/2016.

SA Orozco asked HARIKRISHNA if he had ever worked for any in house projects for Reliance IT, and he stated no. SA Orozco asked if ever worked on any projects for ProSoft IT and HARIKRISHNA stated no.  HARIKRISHNA was asked if he knew the relationship between ProSoft IT and Reliance IT and he stated the KATAM owns both companies.  SA Orozco asked if while he was waiting to get a contract with some other company did he work on anything for Prosoft IT, and he replied no. When asked why he didn't work on any in-house projects for Reliance, he stated that he would have to move back to New York and didn't want to do that.

SA Orozco asked HARIKRISHNA to explain what the $2000 deductions on the paystubs of 8/19/2016 and 9/20/2016 were totaling for a total $4000. HARIKRISHNA explained that he took an advance of $4000 from KATAM as he "Badly needed money" shortly after joining Reliance IT. HARIKRISHNA further explained that KATAM provided the $4000 advance to him via a check where HARIKRISHNA deposited into his bank.
SA Orozco further asked HARIKRISHNA if he had paid for his H1B visa, and HARIKRISHNA adamantly denied it. SA Orozco asked had he ever paid any money to KATAM and HARIKRISHNA stated he only gave KATAM $1400 or $1500 for the premium processing of his H1B visa in May 2016.  HARIKRISHNA stated he deposited the money into KATAM's personal Bank of America account in May 2016.  SA Orozco asked him why he deposited it into his employer's personal account and HARIKRISHNA began to stutter and said that it could have been his personal account but then got nervous and said it could have been his personal account but wasn't sure.  HARIKRISHNA went onto state that about 3 weeks later KATAM told HARIKRISHNA the he never filed for the premium processing for him as it causes too many problems and causes problems.  HARIKRISHNA stated that KATAM never returned the $1500 to him and he never asked for it back from him.

DS# VF-2016-01098
LEAD INTERIM: 01/30/2017
05:00 AM GMT

## SBU (LAW ENFORCEMENT SENSITIVE)

SA Orozco asked HARIKRISHNA what his current bank account balance was and HARIKRISHNA stated his balance was approximately $23,000. When SA Orozco asked him what his student loans were he stated they're paid off and hadn't had them since 2013. SA Orozco asked HARIKRISHNA what his bank balance was during the summer of 2016. HARIKRISHNA stated it was approximately $10,000. When SA Orozco asked him why he had to get an advance of $4000 from KATAM during the summer of 2016 when he had $10,000 in the bank, HARIKRISHNA stated it badly needed money.

SA Orozco explained to HARIKRISHNA what "benching" was and asked if he'd ever heard of it. HARIKRISHNA stated he never did, but appeared that he did know. SA Orozco stated the tenets of "benching" to HARIKRISHNA and explained that he was benched between May 26 and June 23 as the work was not immediately available. SA Orozco turned to Attorney Jessica Marks (In-house counsel for Inovant LLC) to confirm if that was the proper definition of Benching and she agreed and clarified that work must be immediately available for the contractor and no time can lapse for work. HARIKRISHNA admitted that he was benched from May 26 to June 23, 2016.

SA Orozco asked HARIKRISHNA how long he worked for Reliance IT and he stated approximately 6 months. When SA Orozco asked why so short he answered he received a position with Inovant LLC in November 2016. HARIKRISHNA explained that he interviewed with Inovant on July 19, 2016. When SA Orozco pointed out the fact that he interviewed with Inovant almost 45 days after starting work with Reliance IT, and that was suspicious, he stated it was because he didn't like contracting. SA Orozco explained that the fact that he interviewed with another company 45 days after starting, and leaving 6 months later is further proof that he paid Reliance IT for his H1B visa process especially since Reliance would have had to pay $3000-$5000 for his H1B visa and the industry standard is a 2 year contract. HARIKRISHNA denied paying for his visa and stated that he had to wait to start with Inovant until his H1B visa that Inovant applied for him was approved before he could start work. Attorney Jessica Marks (In-house counsel for Inovant LLC) further confirmed that Inovant doesn't begin work for their H1B's until their fully approved. She further stated that Inovant pays all fees and costs associated with the H1B process to include the premium processing and does not take or accept any money from their H1B applicants.

SA Orozco explained the facts that HARIKRISHNA paid $1500 to KATAM to his personal bank account, the payroll deduction of $4000 from his very first paychecks, the fact he was benched and had no work for the first month he was employed by Reliance and the fact that he immediately applied for a new job with Inovant was evidence that he committed visa fraud. HARIKRISHNA denied paying for his visa but did admit to being benched. Attorney Jessica Marks had visible looks on her face that appeared shocked, disappointed and almost in agreement.

SA Orozco concluded the interview and stated he would hear from CBP on February 13, 2017. HARIKRISHNA reinforced his willingness to assist the government and appeared very scared.

Based on the analysis of the above facts: the admission by HARIKRISHNA that he was benched between May 26, 2016 – June 23, 2016, the admission by HARIKRISHNA that he paid KATAM $1500 for a premium processing that was never filed, and that was never returned to HARIKRISHNA, the $4000 payroll deduction from HARIKRISHNA's salary, the fact that HARIKRISHNA immediately started interviewing for with other companies after his H1B application was received; SA Orozco determines that HARIKRISHNA conspired with KATAM to commit Visa fraud and paid Reliance IT/KATAM for his H1B process and was "Benched" between May 26, 2016 and June 23, 2016.

This report is the property of the U.S. Department of State, Diplomatic Security Service. Neither the report nor its contents may be disclosed to unauthorized persons without the expressed permission of the Diplomatic Security Service.

SBU (LAW ENFORCEMENT SENSITIVE)

END OF MOI.

This report is the property of the U.S. Department of State, Diplomatic Security Service.  Neither the report nor its contents
may be disclosed to unauthorized persons without the expressed permission of the Diplomatic Security Service.
**SBU (LAW ENFORCEMENT SENSITIVE)**

Page 4

# Exhibit F

SBU (LAW ENFORCEMENT SENSITIVE)



**Diplomatic Security Service**
**Buffalo Resident Office**

**IMS Case Report**

| DS Case Number:<br>VF-2016-01098 | Case Title:<br>Pro Soft IT | Report Date:<br>03/30/2017 |
|---|---|---|
| Case Type:<br>CRIMINAL | Investigative Program Type:<br>VISA FRAUD | Dates Investigated:<br>03/23/2017 - 03/30/2017 |
| Case Impact:<br>MEDIUM | Case Status:<br>OPEN Investigation / Analysis Ongoing | Open Date:<br>12/12/2016 |
| Report Type:<br>LEAD FINAL | Report Title: | Report Status:<br>APPROVED |

On March 23, 2017 SA Baldwin and SA Fisher interviewed Aruna CHAGANTI at ⬛⬛⬛⬛ Boston, MA. CHAGANTI was asked to describe how she obtained her job and her relationship with Techpro.

CHAGANTI stated that she entered the US in 2011 based on an H-1B visa, but returned to India. CHAGANTI stated that in 2016 she entered her resume onto commercial computer job searches in India. CHAGANTI stated that she was contacted by representatives of Tech Pro who conducted three online interviews.

CHAGANTI stated that she was offered a position with Tech Pro working as a Senior Program Analyst at Prosoft IT Solutions in Rochester, NY. CHAGANTI stated that she was paid $ 60,000 per year for the position. CHAGANTI stated that she went to the Tech Pro office in Parsipany, New Jersey for two days prior to reporting to Prosoft in Rochester. CHAGANTI stated that she worked at Pro Soft in Rochester from June to July 2016 as a Senior Program Analyst CHAGANTI stated that Prosoft did not have the resources to fulfill the contract and she changed positions.

CHAGANTI stated that her sponsor, Tech Soft, is a preferred client of Cool Soft. CHAGANTI stated that Cool Soft has a contract with the Massachusetts Department of Transportation. CHAGANTI stated that Tech Soft placed her at the Massachusetts Department of Transportation as a subcontractor of Cool Soft serving as a Senior Program Analyst. CHAGANTI stated that she is currently earning $90,000 a year.

CHAGANTI stated that she deals with Susan MATHEW (315⬛⬛⬛) from Tech Soft for all of her daily assignments and administrative issues. CHAGANTI stated has had no contact with KATAM.

| Reporting Official:<br>Dolan, Erin M | Distribution: |
|---|---|
| Approving Official:<br>Dolan, Erin M | |

This report is the property of the U.S. Department of State, Diplomatic Security Service. Neither the report nor its contents may be disclosed to unauthorized persons without the expressed permission of the Diplomatic Security Service.
SBU (LAW ENFORCEMENT SENSITIVE)

Page 1

# Exhibit G

Interview with Udaya Bhaskar NEDUNURI

SA Richard LIN and IA David PINCK

April 14, 2017


On Friday, 14 April 2017, at approximately 0937 hours PST, Investigative Analyst (IA) David Pinck (hereinafter referred to as Reporting Agent – RA) and Special Agent (SA) Richard Lin conducted a voluntary, non-custodial interview of Nedunuri, Udaya Bhaskar at Peet's Coffee, located at ███ Broadway, Redwood City, CA 94063. The purpose of the interview was to ask Nedunuri about his H-1B visa petition (EAC1603351880), which was petitioned on his behalf by Reliance IT. Upon arrival, RA and SA Lin identified themselves with their State Department credentials and after agreeing to be interviewed, Nedunuri provided RA with his California Driver's License, number ███████.

During the interview, Nedunuri provided the following information:

Nedunuri has no children and is not married. He first entered the U.S. on/about April of 2011 on an H-1B visa petitioned by Wipro Technologies (Wipro) after receiving his visa stamping in Hyderabad, India, and he continued to work for Wipro until on/about January of 2012. His end client at Wipro was Silver Springs Networks, which is located in Redwood City, CA. In January of 2012 Nedunuri then ported to petitioning company Brave Technologies and worked for end client Landis Gear in Atlanta, GA until on/about May of 2012 when he ported back to petitioning company Silver Springs Networks to work as an I-9 employee. Nedunuri worked at Silver Springs Networks until on/about November of 2015 when he was fired by his manager, who Nedunuri believed was threatened by Nedunuri's technical competency.

On/about November of 2015, after he was fired from Silver Springs Networks, Nedunuri learned of petitioning company Reliance IT online, telephoned them, and spoke with Anjan Katam. Nedunuri did not know Katam's job title. The owner of Reliance IT is a female named Lakshmi Cheruvu. Katam inspected Nedunuri's resume and informed Nedunuri that Reliance IT had many clients that Nedunuri could work for, as well as an in-house product he could work on. Nedunuri agreed to port his H-1B over to Reliance IT, but neither Katam nor anyone else from Reliance IT informed Nedunuri who his end client was going to be. Before Nedunuri's petition was filed, Nedunuri was told nothing about what was going to be in the petition. Nedunuri specifically instructed Katam not to market Nedunuri's resume until after Nedunuri's H-1B petition was approved because Nedunuri's understanding was that it is illegal to market a worker to potential end clients before he has an approved petition, and Nedunuri did not want to get in trouble.

RA NOTE: On/about November 18, 2015, the CEO of Reliance IT Services, Inc., Mahalakshmi Cheruvu, filed an H-1B visa petition (EAC1603351880) claiming that Nedunuri would be working off-site for end client ProSoft IT Services, Inc., located in Rochester, NY. Nedunuri's petition was approved on December 8, 2015 with a validity period from December 8, 2015 to November 6, 2018. END NOTE

Nedunuri initially claimed that once his petition with Reliance IT was approved on/around December of 2015, he then flew to Texas to interview with Katam for a position with ProSoft IT, located at 19901 Southwest Freeway, Sugarland, TX 77479. Nedunuri further claimed that Katam had asked Nedunuri to

relocate to Texas to do "software work" on site directly out of ProSoft IT's office, but that Nedunuri instead convinced Katam to let Nedunuri telework for ProSoft IT from Nedunuri's apartment in Redwood City, CA. Upon further questioning concerning the specifics of Nedunuri's trip to Texas, Nedunuri admitted that he in fact had never flown to Texas to interview for a position at ProSoft IT, and that he had in actuality never worked for ProSoft IT. When asked why he lied about this story, Nedunuri repeatedly apologized and claimed that he was not sure why he lied. SA Lin then explained 18 U.S.C. 1001 to Nedunuri.

Nedunuri promised to tell only the truth and clarified his story by explaining that he did not know that Reliance IT had claimed in Nedunuri's H-1B petition that he would be working on an in-house product at ProSoft IT. Nedunuri further explained that once his petition with Reliance IT was approved on/around December of 2015, Nedunuri moved to Redwood City, CA and asked Katam to market him to IT companies only within the San Francisco Bay Area. Katam agreed and explained that Nedunuri could work on a project until he found Nedunuri an end client, and that Nedunuri could telework while working from his apartment in Redwood City. Nedunuri never lived in New York State, where Reliance IT's office is located, and he never worked out of Reliance IT's office. Nedunuri was never told the name of the project, who the project was for, or what companies were using the project. Reliance IT's project was a computer application that appeared professional, so Nedunuri concluded that it might be worth something, although he was unable to describe what the application did. Nedunuri only ended up working on the project for a couple of hours every time there was a modification made to the application, which did not happen very often.

Reliance IT had two employees who marketed Nedunuri to potential end clients: Ashok LNU (████████) and Sai Ram (585-███████). Nedunuri's resume was marketed by Reliance IT to between 10-15 potential end clients, including Infosys, and Nedunuri ended up having telephone or Skype technical interviews with between 7-8 of these end clients, although none of them culminated in a job offer. Nedunuri ended up marketing his resume to potential end clients himself, which was how he received a job offer from Samsung in San Jose, CA. He accepted the Samsung offer and worked there from March of 2016 until October of 2016 with Reliance IT as his petitioner and 360 IT as his middle vendor. His gross pay was approximately $58 per hour at Samsung.

Nedunuri never met any other beneficiaries who worked at Reliance IT. When asked what ProSoft IT was, Nedunuri responded that he was not sure but because ProSoft IT was mentioned in the signature lines of Ashok LNU and Sai Ram, he believed that ProSoft IT may have been a sister company of Reliance IT. Nedunuri did not know who owned ProSoft IT, and he never asked Katam what ProSoft IT was.

Nedunuri recalled that Reliance IT paid for all of Nedunuri's visa fees, and that he was paid approximately $4,000 per month while he was working on Reliance IT's project. Nedunuri was paid directly by Reliance IT, and his paystubs always had Reliance IT's name on them. While he had no evidence to believe so, Nedunuri suspected that in order to recoup the $4,000 per month they had paid him while working on their project, Reliance IT paid him less money than he deserved when he worked at Samsung. Nedunuri was shown, but did not recognize, copies of the USCIS letter, Purchase Order, and Contract Services Agreement from his H-1B petition filed by Reliance IT (EAC1603351880). Nedunuri did recognize copies of the Job Offer Letter, Employment Agreement, and Labor Condition Application

(LCA) from the petition.  Nedunuri believed that Katam did not file an amended LCA when Nedunuri started working at Samsung.

In October of 2016, Nedunuri's H-1B visa was petitioned directly (WAC1625251160) by Samsung when Samsung hired Nedunuri as a full-time employee.  Nedunuri has worked for Samsung continuously ever since.

Nedunuri provided his contact information as 650-███████ cell, and ██████████████████ RA and SA Lin thanked Nedunuri for his time and the interview concluded without incident at approximately 1118 hours PST.

# Exhibit H

SBU (LAW ENFORCEMENT SENSITIVE)



**Diplomatic Security Service**
**Buffalo Resident Office**

**IMS Case Report**

| DS Case Number:<br>VF-2016-01098 | Case Title:<br>Pro Soft IT | Report Date:<br>05/24/2017 |
|---|---|---|
| Case Type:<br>CRIMINAL | Investigative Program Type:<br>VISA FRAUD | Dates Investigated:<br>05/19/2017 - 05/24/2017 |
| Case Impact:<br>MEDIUM | Case Status:<br>OPEN Investigation / Analysis Ongoing | Open Date:<br>12/12/2016 |
| Report Type:<br>LEAD FINAL | Report Title: | Report Status:<br>APPROVED |

ROI-Vijay Yadav

On 4/19/2017, DSS Special Agent Timothy Forte and HSI Special Agent Edward Koranda interviewed Vijay Yadav at his place of work (████████████, Westlake, Texas). Mr. Yadav presented a TXDL as proof of identity. The agents displayed their credentials and identified themselves.

1) SA Forte asked Yadav where he lived. Yadav stated that he lived at 1█████████████████, Irving, TX. Yadav provided his cell phone number as (717)████████.

2) SA Forte asked Yadav when the first time he came to the US on a visa. Yadav stated that he came to the US in December of 2015 on a B1/B2 visa when he worked for Telentica Software. He came to do work at Opera Media in San Mateo, California. Yadav stated that he then adjusted status to H1b and stayed in the US.

3) SA Forte asked Yadav about his first H1b denial. Yadav stated that he was contacted by Sai at Reliance. Sai had seen his resume online on the job boards. Yadav stated that his H1b processing took a long time to process and there were some questions about SQL Data. Eventually, Sai introduced him to Anjan at Prosoft. Yadav stated that Reliance had a close relationship with Prosoft and Prosoft had a lot more contacts and customers than Reliance. Anjan spoke to Yadav about creating or enhancing Prosoft's local job server. Anjan worked with Reliance to transfer his H1b visa to Prosoft. Yadav thought that the name of the server was talentzing.com.

4) Yadav stated that Sai at Reliance referred him to Anjan at Prosoft.

5) Yadav stated that he was contacted by Sai and referred to Anjan.

6) Yadav stated that he was assisted by Ashok and Sai when he went through the processing at Reliance. Yadav communicated with Anjan at Prosoft. Yadav was not sure if Ashok was at Reliance or Prosoft. . Yadav also mentioned Bhatcha. SA Forte asked Yadav for the contact information for Sai and Anjan. Yadav expressed concern about divulging this information. SA Forte explained that the information provided would be held confidential within reporting policy. Yadav provided sai@relianceideas.com and katam@prosoftit.com as email addresses for Sai and Anjan. Yadav stated that Anjan's cell number was (585)4███████. Yadav stated that he mostly spoke on the phone with Anjan and Sai. He used emails when he needed to send documents to them. Yadav stated that Sai and Anjan were dependent on each other with many projects.

7) Yadav stated that he was never asked to pay any fees for his visa. Yadav signed a contract that said he needed to give two week's notice before leaving the company. Yadav stated that the employment contract he signed was for 60 K usd a year.

8) Yadav stated that he got paid for the first time in March 2016. He started working for Reliance/Prosoft on February 2, 2016. Prior

| Reporting Official:<br>Forte, Tim | Distribution: |
|---|---|
| Approving Official:<br>Forte, Tim | |

This report is the property of the U.S. Department of State, Diplomatic Security Service. Neither the report nor its contents may be disclosed to unauthorized persons without the expressed permission of the Diplomatic Security Service.

SBU (LAW ENFORCEMENT SENSITIVE)

## SBU (LAW ENFORCEMENT SENSITIVE)

DS# VF-2016-01098
LEAD FINAL: 05/24/2017
04:00 AM GMT

to beginning his work on February 2nd he was working for Telentica.

9)  SA Forte asked if Yadav had ever received a pay advance.  Yadav stated that he had received about 1000 USD  as an advance to help him with the costs of moving from California to Texas.  Yadav stated that Reliance took money out of his check.

10)  Yadav currently works for Sabre.  H1b transfer on April 10, 2017.

11)  Sabre, Westlake, Texas.

12)  Yadav stated that he spoke about once a week to Anjan at Prosoft.  They would discuss work.   Yadav stated that he spoke with Sai at Reliance.  Sai would ask him how are things at work.    SA Forte asked if he ever spoke with Reliance employee Lakshmi Cheruvu.  Yadav stated that he talked to her when he was in India in 2014.  She contacted him about working for Reliance.

13) n/a

14)  Yadav didn't know of any.

15) Yadav spoke with Anjan once a week.  See #6 for contact info.

16)  Yadav stated that he never worked at Reliance or Prosoft.  Once he got his H1b, he went straight to Sabre in Texas to work.

17)  Yadav stated that he never worker on software at Reliance or Prosoft.

18)  Yadav stated that he works on the Sabre database which handles reservations for hotels, flights, etc.

19)  Yadav stated that he was paid by Reliance and agreed to send some pay stubs to SA Forte. (attached in lead)

20)  Yadav will provide from Reliance.

21)  n/a, see paystubs

22)  Yadav never traveled to any of these cities.

23)  No spouse.

24)  Yadav stated the process has been the same, but with Sabre there were more drug screenings and back ground checks.

25)  SA Forte asked Yadav about Reliance and Samsung.  Yadav stated that he never worked on or had heard of any project with Samsung.

26)  Yadav never worked on an internal project at Prosoft.

This report is the property of the U.S. Department of State, Diplomatic Security Service.  Neither the report nor its contents
may be disclosed to unauthorized persons without the expressed permission of the Diplomatic Security Service.
**SBU (LAW ENFORCEMENT SENSITIVE)**

Page 2